# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **ARIANNA TAYLOR, ERIC TAYLOR, and GAIL TAYLOR,** | ) ) ) | |
| **Plaintiffs,** | ) ) | |
| **v.** | ) ) | **Case No. 3:14-cv-01363** |
| | ) | **Judge Trauger / Knowles** |
| **CHARLES W. HARLAN***, et al.***, | ) ) | |
| **Defendants.** | ) | |

## REPORT AND RECOMMENDATION

### I.  Introduction and Background

Pending before the Court are five Motions to Dismiss for Lack of Subject Matter Jurisdiction filed pursuant to Fed. R. Civ. P. 12(b)(2):  the first, filed by Defendants Robert and Michelle Elgin ("the Elgins") (Docket No. 83); the second, filed by Defendants First Colony Life Insurance Company and Jamestown Life Insurance Company ("the Insurance Companies") (Docket No. 85); the third, filed by Defendants Samuel Jacobs and William Hurst ("J&H") (Docket No. 91); the fourth, filed by Defendant Curtis Farran ("Farran") (Docket No. 96); and the fifth, filed by Defendants Charles Harlan and Gina Noble ("H&N") (Docket No. 123).

In support of their Motions, the Elgins have filed a Brief in Support (Docket No. 86), as well as their individual Affidavits (Docket Nos. 86-1, 86-2); the Insurance Companies have filed their own Brief in Support (Docket No. 85-1), and the Affidavit of Vidal Torres (Docket No. 85-2); the Elgins and the Insurance Companies have filed a Joint Brief in Support (Docket No. 87) with sealed Exhibits (Docket Nos. 87-1 - 87-14); J&H have filed a Brief in Support (Docket No.

91), as well as their Declarations (Docket Nos. 91-1, 91-2); Farran has filed a Brief in Support

(Docket No. 97) and his Declaration (Docket No. 96-1); and H&N have filed a Brief in Support

(Docket No. 124), as well as their Affidavits (Docket Nos. 124-1, 124-2).

In response to the five individually filed Motions to Dismiss, Plaintiffs have filed four

Responses.  Docket Nos. 145, 146, 147, and 148.

Defendants have filed a Joint Reply addressing Plaintiffs' four Responses and supporting

their individual Motions.  Docket No. 154.  Without leave of Court, Plaintiffs have filed a

"Rebuttal to Defendants [*sic*] Reply Brief," with Exhibits.  Docket No. 162.

The allegations of Plaintiffs' Complaint revolve around an incident that occurred

approximately sixteen years ago in Indiana, when Plaintiff Arianna Taylor witnessed her sister,

Jazzlyn Taylor, fall into a swimming pool and suffer a traumatic brain injury.  Docket Nos. 1;

172, p. 2.  The incident resulted in the loss of Jazzlyn's speech and movement, and necessitated

around the clock care.  Docket No. 1.  Arianna and Jazzlyn, along with Plaintiffs Eric Taylor and

Gail Taylor (Arianna and Jazzlyn's parents), received a personal injury settlement that consisted

of several structured settlements and annuities as a result of the incident.  *Id.*

Plaintiffs filed this pro se action alleging that Defendants, along with "unnamed co-

conspirators," committed several torts against them, including embezzlement, conversion, unjust

enrichment, misappropriation of settlement funds,  fraud, discrimination, intentional infliction of

emotional distress, breach of fiduciary duty, and conspiracy.  *Id.*  Plaintiffs explain, "This action

arises out of a sophisticated conspiratorial scheme to embezzle moneys from plaintiffs through

materially false and fraudulent annuity proposals fraudulent structured settlements, annuities

investments and periodic payments, allegedly brokered under Title 26 U.S.C. § 130."  *Id.*

Plaintiffs assert that Defendants: made false and misleading statements and omissions so that Plaintiffs could not make informed decisions; drafted unauthorized trust instruments for Arianna and Jazzlyn; siphoned money from the qualified settlement offers; and diverted funds to their own use. *Id.* Plaintiffs also contend that Defendants "committed additional offenses including but not limited to obstruction of justice, in violation of Plaintiff's [*sic*] civil and constitutional rights under the First, Fourth, Fifth, Sixth, and Fourteenth Amendments to the U.S. Constitution an [*sic*] 42 U.S.C. § 1981, 1983, 1986." *Id.*

Over the years, Plaintiffs have filed several lawsuits related to these allegations in both federal and state courts in Indiana. *See* Docket No. 87 and attached Exhibits under seal. At the time of the filing of the instant action, Defendants Eric Taylor and Gail Taylor listed their address as being in Indianapolis, Indiana, while Defendant Arianna Taylor listed her address as being in Nashville, Tennessee.[1] *See Docket Sheet.* After losing their cases in Indiana, Defendants have filed the instant action in the Middle District of Tennessee, "[b]ased upon the fact that plaintiff Arianna is a resident of the state of Tennessee residing in Nashville, Tennessee." *Id.*; Docket No. 146, second unnumbered page.

The basis for each of the five pending Motions to Dismiss is that this Court lacks personal jurisdiction over Defendants.[2] Docket Nos. 83, 85, 91, 96, and 123. Defendants argue

---

[1] Plaintiff Arianna Taylor's current address is unknown, as recent documents sent to her Tennessee address have been returned unclaimed. *See* Docket No. 80.

[2] Defendants also argue that Plaintiffs' Complaint fails to state a claim upon which relief may be granted because this action is frivolous, barred by issue preclusion, and barred by the statute of limitations. *See, e.g.,* Docket Nos. 86, 91, 96, 123. Because the undersigned recommends dismissal based on jurisdictional grounds, the undersigned will not analyze Defendants' 12(b)(6) arguments.

that the State of Tennessee has no connection to the events giving rise to this action, no connection to Defendants, and no connection to Plaintiffs.[3]  *Id.;* Docket Nos. 85-1, 85-2, 86, 86-1, 86-2, 87, 87-1 - 87-14, 91, 91-1, 91-2, 96-1, 97, 124, 124-1, and 124-2.  Defendants note that Plaintiffs, in the jurisdictional statement in their Complaint, fail to allege that this Court has personal jurisdiction.[4]  *See* Docket No. 86.

Plaintiffs four Responses each address different arguments.[5]  *See* Docket Nos. 145, 146, 147, and 148.  Plaintiffs' first Response sets forth their arguments concerning res judicata, collateral estoppel, and issue preclusion.[6]  *See* Docket No. 145.  Plaintiffs' second Response sets

---

[3] As noted, recent documents sent to Plaintiff Arianna Taylor's Tennessee address have been returned unclaimed.  *See* Docket No. 80.

[4] The jurisdictional statement in Plaintiffs' Complaint states as follows:

> The United States Federal District Court ("District Court") for the Middle District Of Tennessee, Nashville Division has subject matter jurisdiction over plaintiffs claims pursuant to inter alia 28 U.S.C. § 1331 [federal question jurisdiction], 1332 [diversity jurisdiction], 1343 [civil rights jurisdiction], and pursuant to 42 U.S.C. §§ 1981 ["Equal rights under the law"], 1983 ["Civil action for deprivation of rights"], 1985 ["Conspiracy to interfere with civil rights"], 1986 ["Action for neglect to prevent"].  Title 18 U.S.C. § 1965 ["Venue and process"].  The District Court has supplemental jurisdiction as to the claims pursuant to 28 U.S.C. 1367.  Additionally venue is proper pursuant to inter alia 28 U.S.C. §§ 1391.

Docket No. 1.

[5] At the end of each Response, Plaintiffs seek leave to amend their Complaint essentially to cure any deficiencies *IF* the Court finds that their Complaint fails to state a claim upon which relief may be granted.  *See* Docket Nos. 145, 146, 147, and 148.

[6] Plaintiffs argue, *inter alia*, that:

(1) This action was "filed by Defendant Arianna Taylor for wrongs done to her when she was a minor for which she was unable to bring suit due to her status as a minor" because her

forth their statute of limitations arguments, and also sets forth their arguments that Plaintiffs Eric

and Gail Taylor are necessary and/or indispensable parties to this Tennessee action.[7]  Docket No.

146.  Plaintiffs' third Response argues that this Court has personal jurisdiction over Defendants

because they have "ongoing internet activities" "in all 50 states."[8]  Docket No. 147.  Plaintiffs'

---

parents were "legally barred from representing [her] in any legal proceeding in State or Federal
Court based upon common and statutory law";

(2) "[T]he mere fact that the Taylors as non-attorneys were allowed to (1) render legal
advice and services on their minors legal rights; (2) represent their minor children in a legal
proceedings [*sic*]; and (3) select, prepare, complete and filed legal documents on their minor
children's behalf constituted a violation of the due process clause under the 14th amendment" and
"renders the court's judgments void";

(3) Their earlier court rulings "were result driven to unlawfully conceal defendants illegal
activities outlined in plaintiffs complaint, and to place on the record a final judgment e.g. Rule
41E dismissal and summary judgment to foreclose any subsequent legal actions";

(4) They were "unlawfully obstructed in prosecuting their cases" by a variety of people
through a variety of events and actions;

(5) They were "unlawfully denied rudimentary discovery" by numerous people and
entities; and

(6) "[T]he Indiana courts were incompetent by reason of bias."

Docket No. 145.

[7] Specifically, Plaintiffs contend, "Plaintiffs Eric and Gail Taylor are in this case as
indispensable parties because Arianna has no direct remembrance of the events, transactions, or
occurrences that form her complaint because they occurred in her childhood, thus her parents
Eric and Gail Taylor for all intents and purposes effectively serve as Arianna memory [*sic*] based
upon her parents ("the Taylor's") knowledge of dates, transactions, events and occurrences that a
child cannot possibly possess due to their minority status."  Docket No. 146, third unnumbered
page.  Plaintiffs continue, "Or in the alternative, plaintiffs Eric and Gail Taylor are necessary
parties in the case as permissive plaintiffs Pursuant to Fed. Rule Civ. Proc. 20(a)(1)(A); because
only they have intimate knowledge of the personal injury settlements that gave rise to plaintiff
Arianna's civil action.  And because Arianna claims [*sic*] involve a question of law or fact
common too [*sic*] each party and a series of transactions...."  *Id.*
Plaintiffs further argue that, although Arianna's claims were filed after the Indiana statute
of limitations had run, they "nevertheless allege that the complaint was timely under Tennessee
law which allows for the suspension of the statute of limitations in certain cases."  *Id.*, fourth
unnumbered page.

[8] Plaintiffs' contend:

5

fourth Response argues that Defendants' alternative 12(b)(6) grounds are improper, since

Defendants submitted Declarations, Affidavits, and other matters outside the pleadings that were

not excluded by the Court. Docket No. 148. Plaintiffs contend that the Court cannot consider

Defendants' submissions without converting the 12(b)(6) Motions to Motions for Summary

Judgment, and they object to such conversion because they have not been able to seek discovery

to rebut any such summary judgment arguments.[9] *Id.* Plaintiffs' fourth Response also contends

that they have stated claims for which relief may be granted and sets forth the reasons therefor.

*Id.*

Defendants have filed a Joint Reply to Plaintiff's four Responses. Docket No. 154. In

their Reply, Defendants reiterate their contentions that this action should be dismissed because:

(1) this Court lacks personal jurisdiction over them; (2) Plaintiffs' claims are barred by issue

preclusion; and (3) Plaintiffs' claims are barred by the applicable statutes of limitations. *Id.*

Defendants also contend that Plaintiffs have, "throughout their briefing, violated Rule 11 by

---

> [T]he court must conclude that defendants purposefully and deliberately use [*sic*] the Internet operation with a high level of interactivity which encourages customers accessing its website to order structured financial services, annuity services, insurance services, and the like; including residence in this forum. Therefore, these websites fall within the sliding scale category of websites that allow defendants to do business and enter into contracts with the residents of foreign jurisdictions over the internet. Consequently, such defendants purposefully availed themselves of the privilege of doing business in this jurisdiction.

Docket No. 147, sixth unnumbered page.

[9] As has been noted, because the undersigned recommends dismissal based on jurisdictional grounds, the undersigned will not analyze Defendants' 12(b)(6) arguments, and therefore will also not analyze Plaintiffs' conversion arguments.

making offensive, unsubstantiated, and defamatory allegations against Defendants, Defendants' counsel, and sitting judges." *Id.*, p. 2. Defendants also take issue with Plaintiffs' filing four separate Responses and argue that this was done "in what appears to be an attempt to circumvent the page limit of Local Rule 7.01." *Id.,* p. 3.

With regard to Defendants' primary argument that this Court lacks personal jurisdiction over all Defendants, Defendants argue:

> The Taylors cannot establish personal jurisdiction over any of the Defendants in this case. In their Response Briefs, the Taylors argue that jurisdiction exists because Arianna is a citizen of Tennessee, some Defendants have websites, and Arianna, now living in Tennessee, is receiving annuity payments from a 2002 settlement entered in Indiana. None of these facts establishes personal jurisdiction because the relevant inquiry is not where Arianna may live or receive payments. The inquiry is whether Defendants have engaged in conduct subjecting them to jurisdiction in Tennessee. A website is not enough, and no facts exist to establish personal jurisdiction.

*Id.*, p. 4 (footnote omitted).

Defendants additionally respond that, although Plaintiffs contend that they are subject to personal jurisdiction in Tennessee "because they supposedly conduct business via websites and through the U.S. Mail," Plaintiffs do not establish that any such websites exist, much less that any Defendant conducts business in Tennessee by any method, and they fail to cite any evidence to support these claims. *Id.*, p. 5. Defendants argue that, even if Plaintiff had adduced evidence that some or all of Defendants maintained websites, that evidence would be "insufficient to justify general jurisdiction," as "the fact that [a defendant] maintains a website that it accessible to anyone over the Internet is insufficient to justify general jurisdiction." *Id., quoting Bird v. Parsons,* 289 F.3d 865, 874 (6th Cir. 2002).

Defendants further assert that "no defendant has any contacts that could be interpreted as 'continuous and systematic.'" *Id.,* p. 4. Defendants argue that the sole contact with Tennessee is that First Colony Insurance is registered to do business in Tennessee, but notes that First Colony Insurance does not sell insurance policies to Tennessee customers, own real estate in Tennessee, have employees in Tennessee, or conduct meetings in Tennessee. *Id.*, *citing* Docket No. 85-1, at 4-5. Defendants contend that no other Defendant is located in Tennessee, conducts business in Tennessee, or solicits business in Tennessee. *Id.*

As to the issue of specific personal jurisdiction, Defendants argue that Plaintiffs' contention that, "because Arianna's annuity went into effect in 2014 after Arianna allegedly moved to Tennessee, the Defendants are subject to personal jurisdiction in Tennessee," is misplaced, as "participating in the formation of an annuity in Indiana simply cannot constitute purposeful availment of the benefits of conducting business in some other state to which the recipient happened to move some ten years after the fact." *Id.*, p. 6. Defendants contend that they had no way of knowing Arianna's future plans when the settlement was entered into in 2002, and argue that, if jurisdiction could be found based solely on an annuity recipient's current residence, Defendants would essentially be subject to nation-wide jurisdiction, in direct contravention of the Supreme Court's holding in *World-Wide Volkswagen Corp. v. Woodson*, 444. U.S. 286, 295 (1980). *Id.*

Defendants assert that Plaintiffs make no effort to show that the claims in this action arose from any of Defendants' contacts with Tennessee because they could not, as the claims arose in Indiana. *Id*., p. 7. Finally with regard to jurisdiction, Defendants maintain that exercising personal jurisdiction over them would be unreasonable, because they would all be

forced to travel to Tennessee, when none of the alleged deceptive acts took places within Tennessee, and Indiana has a far stronger interest in resolving the controversy. *Id.*, *referencing Intera, infra.*

As to Plaintiffs' remaining Responses, Defendants argue that issue preclusion bars Plaintiffs' claims because Plaintiffs have previously litigated all of the issues that they raise in this case in a series of unsuccessful lawsuits in state and federal courts, and because Plaintiffs' claims that the Indiana courts allowed improper pro se representation and were "incompetent by reason of bias" are unavailing reasons for avoiding issue preclusion. *Id.*, p. 8-11. Defendants also argue that, absent tolling, Plaintiffs' claims are time-barred., and note that Plaintiffs so concede. *Id.*, p. 11-12. Defendants assert that Plaintiffs are not entitled to equitable tolling in this case because they cannot establish that either requirement for invoking equitable tolling exists under the facts they presented.[10] *Id.*, p. 12-15. Finally, Defendants note that they are not state actors for purposes of 42 U.S.C. § 1983, such that Plaintiffs cannot sustain those claims. *Id.*, p. 15-16.[11]

In Plaintiffs' "Rebuttal to Defendants['] Reply Brief," filed without leave of Court, Plaintiffs' argue that they stand by their contentions and statements and "cannot in good conscience retract what we believe neither do we have the luxury of being politically correct when we live everyday with the aftermath of defendants actions...," such that Rule 11 sanctions

---

[10] The party seeking tolling must establish that: (1) she has pursued her rights diligently; and (2) some extraordinary circumstance stood in her way and prevented timely filing. *Patterson v. Lafler*, 455 F. App'x. 606, 609 (6th Cir. 2012).

[11] Defendants also argue that Plaintiffs should not be permitted to amend their Complaint to cure deficiencies as requested at the end of each of their Responses. *Id.*, p. 16-18.

are not warranted.[12]  Docket No. 162, p. 2-4.  Plaintiffs reiterate their contention that their claims are not barred by issue preclusion, *inter alia*, because they were denied a full and fair opportunity to litigate their claims in the earlier state and federal cases, as they were "obstructed, impeded, threatened, intimidated and fined for simply seeking to prosecute their case pursuant to their constitutional rights," and because the Indiana courts were incompetent by reason of "compensatory bias and camouflage bias." *Id.*, p. 5-14.  Plaintiffs additionally reiterate their contention that their claims are not time-barred under the doctrine of equitable estoppel because "defendants willfully withheld and concealed material facts from plaintiffs and thereby preventing [*sic*] discovery of wrongs committed by defendant's [*sic*] and their co-conspirators." *Id.*, p. 16-17, 19-21.  Plaintiffs argue that Defendants' "concealment is ongoing," such that their "claims are tolled." *Id.*  With regard to Arianna specifically, Plaintiffs also reiterate their contention that her claims are not barred and that she has established that equitable tolling is appropriate.  *Id.*, p. 17-19.  Concerning whether this Court has personal jurisdiction over Defendants, Plaintiffs' reiterate their contention that Defendants conducted business over the internet and are therefore subject to this Court's jurisdiction.  *Id.*, p. 22-14.

In their "Rebuttal," Plaintiffs further argue that Defendants acted under color of state law for purposes of § 1983 because they acted "as part of a conspiracy in conjunction with judicial officials and legal representatives," and because "the conspiracy was authorized and conducted by state officials using the state courts as a vehicle in which to conduct their fraud." *Id.*, p. 14-16.  Plaintiffs also raise arguments that Defendants: (1) "racially profiled plaintiffs by selecting

_____

[12] Interestingly, in their Joint Reply, Defendants explicitly stated, "In the interest of expediting the resolution of this case, Defendants are *not* pursuing sanctions ..." *See* Docket No. 154, p. 3-4 (emphasis added).

them based on their race to defraud them"; (2) deprived them under their "rights under the U.S. constitution thereafter defendant [*sic*] to racial animus obstructed plaintiffs access to the courts to seek relief plaintiffs further allege that defendants fraudulent acts at all times relevant were racially motivated [*sic*]." *Id.*, p. 21. Plaintiffs additionally contend that their requests for leave to amend their Complaint to cure any deficiencies should be granted because "the complaint was hurriedly redrafted and filed with the court." *Id.*

## II. Analysis

### A. Standard of Review

In the context of a Rule 12(b)(2) motion based on lack of personal jurisdiction, the plaintiff bears the burden of establishing the existence of personal jurisdiction. *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.,* 503 F.3d 544, 549 (6th Cir. 2007) (*citing Serras v. First Tennessee Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989)). A district court may address such a motion on the parties' submissions or it may permit limited discovery and hold an evidentiary hearing. *Id.* When, as here, the Court does not conduct an evidentiary hearing and relies solely on written submissions and Declarations and Affidavits to resolve the Rule 12(b)(2) motion(s), the plaintiff need only make a prima facie showing of jurisdiction, and the court will construe the facts in a light most favorable to the non-moving party. *Indah v. S.E.C.*, 661 F.3d 914, 920 (6th Cir. 2011).

Whether personal jurisdiction exists for an out-of-state defendant requires a two-step inquiry: (1) whether the forum state's long-arm statute permits service of process; and (2) whether assertion of personal jurisdiction violates due process. *See, e.g., Aristech Chem. Int'l Ltd. v. Acrylic Fabricators Ltd.*, 138 F.3d 624, 627 (6th Cir. 1998); *Reynolds v. Int'l Amateur*

*Athletic Fed'n*, 23 F.3d 1110, 1115 (6th Cir. 1994). Tennessee's long-arm statute, Tenn. Code Ann. § 20-2-214, expands the jurisdiction of Tennessee courts to the full limit permitted by due process. *Gordon v. Greenview Hosp., Inc.,* 300 S.W.3d 635, 645 (Tenn. 2009). When a state's long-arm statute reaches as far as the limits of the Due Process Clause, the two inquiries merge, and the Court need only determine whether the exercise of personal jurisdiction violates constitutional due process. *Aristech*, 138 F.3d at 627.

"Due process requires that a defendant have minimum contacts ... with the forum State ... such that he should reasonably anticipate being hauled into court there." *Schneider v. Hardesty*, 669 F.3d 693, 701 (6th Cir. 2012) (*quoting World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, 297 (1980)). This requirement ensures that the exercise of jurisdiction does not "offend traditional notions of fair play and substantial justice." *See International Shoe v. Washington*, 326 U.S. 310, 316 (1945); *Schneider*, 669 F.3d at 701. Depending on the type of minimal contacts in a case, personal jurisdiction can take one of two forms: general or specific. *Air Prods.,* 503 F.3d at 550.

General jurisdiction arises when a defendant maintains contacts with the forum state that are sufficiently continuous and systematic, even when the cause of action has no relation to those contacts. *Harris v. Lloyds TSB Bank, PLLC,* 281 Fed. Appx. 489, 492 (6th Cir. 2008) (*citing Intera Corp. v. Henderson*, 428 F.3d 605, 615 (6th Cir. 2005)). When determining whether a defendant has "continuous and systematic" contacts, courts within the Sixth Circuit consider several factors, including: (1) whether the defendant has a physical presence in the forum state; (2) whether the defendant solicits business in the forum state; (3) the extent to which the defendant holds itself out as doing business in the forum state through advertisements, listings,

or bank accounts; and (4) the volume of business conducted in the forum state. *See, e.g., Beightler v. Produkte Fur Die Medizin AG*, 610 F. Supp. 2d 847, 850-51 (N.D. Ohio 2009).

Specific jurisdiction is based on activities that arise out of or relate to the cause of action, and can exist even if the defendant's contacts are not continuous and systematic. *See, e.g., Int'l Shoe*, 326 U.S. 310; *Indah*, 661 F.3d at 920. Specific jurisdiction "exposes the defendant to suit in the forum state only on claims that 'arise out of or relate to' a defendant's contacts with the forum." *Kerry Steel, Inc. v. Paragon Indus., Inc.,* 106 F.3d 147, 149 (6th Cir. 1997) (*citing Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414-15 (1984)).

The Sixth Circuit has developed three criteria for determining whether specific jurisdiction exists over a particular defendant:

> First, the defendant must purposely avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*S. Mach. Co. v. Mohasco Indus., Inc.,* 401 F.2d 374, 381 (6th Cir. 1968).

Thus, for the exercise of specific personal jurisdiction to be appropriate, Defendants must have purposefully availed themselves of the privilege of acting or causing a consequence in Tennessee, the cause of action must arise from Defendants' activities in Tennessee, and Defendants' acts or the consequences of their acts must have a substantial enough connection with Tennessee to make the exercise of personal jurisdiction reasonable. *Id.*

Purposeful availment is "something akin to a deliberate undertaking," that is, a deliberate effort by the defendant to direct its activities toward, and to make contact with, the forum.

*Bridgeport Music, Inc., v. Still N The Water Pub*, 327 F.3d 472, 478 (6th Cir. 2003). Purposeful availment exists "when the defendant's contacts with the forum state proximately result from actions by the defendant himself that create a substantial connection with the forum state, and when the defendant's conduct and connection with the forum are such that he should reasonably anticipate being hauled into court there." *Id.*

A cause of action "arises from" the defendant's contacts with the forum state when the cause of action has a "substantial connection" to the defendant's forum state activities, that is, "where a defendant's contacts with the forum state are related to the operative facts of the controversy." *Tharo Systems, Inc. v. Cab Produkttechnik GMBH & Co. KG*, 196 Fed. Appx. 366, 371 (6th Cir. 2006).

If a court determines that specific jurisdiction is proper under the first two prongs, then it must decide whether the imposition of personal jurisdiction is reasonable. *Mohasco*, 401 F.2d at 381. The third prong of the test mandates that "the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *Youn v. Track, Inc.,* 324 F.3d 409, 419 (6th Cir. 2003) (citation omitted). Generally, when considering whether it is reasonable to exercise personal jurisdiction over a non-resident defendant, a court must consider several factors including: (1) the burden on the defendant; (2) the interest of the forum state; (3) the plaintiff's interest in obtaining relief; and (4) other states' interest in securing the most efficient resolution of the controversy. *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1268 (6th Cir. 1996).


**B.  The Case At Bar**

As discussed, the primary issue before the Court in the instant Motions is whether the Court has personal jurisdiction over Defendants. The undersigned will address each Defendant in turn.

### 1. Robert Elgin

At the time of the filing of his Affidavit, Defendant R. Elgin was employed by Dominion Economic Analysis, Inc., d/b/a Structured Financial Associates ("SFA") in Middleburg, Virginia, as a Settlement Specialist and Washington, DC Metropolitan Region Associate. Docket No. 86-1, Affidavit of Robert Elgin ("R. Elgin Aff."), ¶ 2. Defendant R. Elgin does not own, use, or possess any real or personal property located in Tennessee; does not reside in Tennessee; and does not lease or maintain any office, residence, or place of business in Tennessee. *Id.*, ¶¶ 3-4, 7. Defendant R. Elgin has not appointed a registered agent in Tennessee. *Id.*, ¶ 5. He does not own or operate any business located in Tennessee, has never solicited business in Tennessee, and does not solicit business in Tennessee, nor does he have any employees who solicit business or reside in Tennessee. *Id.*, ¶¶ 6-8, 9.

Defendant R. Elgin does not hold himself out as doing business in Tennessee through advertisements, listings, or bank accounts; has never specifically targeted Tennessee with an advertising campaign; and does not have a bank account in Tennessee. *Id.*, ¶¶ 10-12. He has never supplied or contracted to supply goods, materials, or services that could be used, consumed, or rendered in Tennessee, and he conducts no business whatsoever in Tennessee. *Id.*, ¶¶ 13-14.

Prior to the instant lawsuit, Defendant R. Elgin has never been a plaintiff or defendant in any lawsuit venued in Tennessee. *Id.*, ¶ 15.

Defendant R. Elgin was involved in Plaintiffs' personal injury lawsuit as an annuity broker in the SFA office assigned to the case by the insurance carrier for the defense. *Id.*, ¶ 16. At the direction of defense counsel, he assisted in the preparation of structured settlement proposals for Plaintiffs' case. *Id.*, ¶ 17. None of his involvement in the original case took place in Tennessee or with individuals or businesses located in Tennessee. *Id.*, ¶ 18.

If required to defend himself in Tennessee, Defendant R. Elgin will have to travel to Tennessee at significant cost. *Id.*, ¶ 19.

### 2. Michelle Elgin

At the time of the filing of her Affidavit, Defendant M. Elgin was employed by Dominion Economic Analysis, Inc., d/b/a Structured Financial Associates ("SFA") in Middleburg, Virginia, as a Settlement Specialist and Assistant to the Washington, DC Metropolitan Region Associate. Docket No. 86-2, Affidavit of Michelle Elgin ("M. Elgin Aff."), ¶ 2. Defendant M. Elgin does not own, use, or possess any real or personal property located in Tennessee; does not reside in Tennessee; and does not lease or maintain any office, residence, or place of business in Tennessee. *Id.*, ¶¶ 3-4, 7. Defendant M. Elgin has not appointed a registered agent in Tennessee. *Id.*, ¶ 5. She does not own or operate any business located in Tennessee, has never solicited business in Tennessee, and does not solicit business in Tennessee, nor does she have any employees who solicit business or reside in Tennessee. *Id.*, ¶¶ 6-8, 9.

Defendant M. Elgin does not hold herself out as doing business in Tennessee through advertisements, listings, or bank accounts; has never specifically targeted Tennessee with an advertising campaign; and does not have a bank account in Tennessee. *Id.*, ¶¶ 10-12. She has never supplied or contracted to supply goods, materials, or services that could be used,

consumed, or rendered in Tennessee, and she conducts no business whatsoever in Tennessee. *Id.*, ¶¶ 13-14.

Prior to the instant lawsuit, Defendant M. Elgin has never been a plaintiff or defendant in any lawsuit venued in Tennessee.  *Id.*, ¶ 15.

Defendant M. Elgin was involved in Plaintiffs' personal injury lawsuit as an assistant in the SFA office assigned to the case by the insurance carrier for the defense.  *Id.*, ¶ 16.  As an assistant in the office, she assisted in the preparation of structured settlement proposals for Plaintiffs' case.  *Id.*, ¶ 17.  None of her involvement in the original case took place in Tennessee or with individuals or businesses located in Tennessee.  *Id.*, ¶ 18.

If required to defend herself in Tennessee, Defendant M. Elgin will have to travel to Tennessee at significant cost.  *Id.*, ¶ 19.

### 3.  First Colony Life Insurance Company

Genworth Life and Annuity Insurance Company ("GLAIC") is the successor to Defendant First Colony Life Insurance Company ("First Colony").  Docket No. 85-2, Affidavit of Vidal Torres ("Torres Aff."), ¶ 1.  GLAIC/First Colony is a corporation incorporated under the laws of the Commonwealth of Virginia, with its principal place of business in the Commonwealth of Virginia.  *Id.*, ¶ 4.  GLAIC/First Colony is registered to do business in Tennessee with the Tennessee Department of Insurance, but does not directly sell insurance policies to customers in Tennessee and only sells its insurance policies through independent brokers.  *Id.*, ¶ 5.  GLAIC/First Colony pays premium taxes (i.e. taxes on the premiums that it collects) in Tennessee, but does not maintain an office in Tennessee, have any employees in Tennessee, hold any type of meetings in Tennessee, and does not own any real estate in

Tennessee.  *Id.*, ¶¶

### 4.  Jamestown Life Insurance Company

Jamestown Life Insurance Company ("Jamestown") is a corporation incorporated under the laws of the Commonwealth of Virginia, with its principal place of business in the Commonwealth of Virginia.  Torres Aff., ¶ 11.  Jamestown is not licensed to do business in Tennessee, does not issue policies or collect premiums in Tennessee, does not pay taxes in Tennessee, does not maintain an office in Tennessee, does not have employees in Tennessee, does not advertise in Tennessee, does not hold any type of meetings in Tennessee, and does not own any real estate in Tennessee.  *Id.*, ¶¶ 12-19.

### 5.  Samuel Jacobs

Defendant Jacobs is a resident and citizen of Indiana.  Docket No. 91-1, Declaration of Samuel Jacobs ("Jacobs Dec."), ¶ 4.  He is an attorney in good standing and licensed to practice by the Indiana Supreme Court, and his principal place of business is located at 6048 North Keystone Avenue, Indianapolis, Indiana, 46220.  *Id.*, ¶¶ 5-6.  Defendant Jacobs has never resided in, or been a citizen of, Tennessee.  *Id.*, ¶ 7.  He does not own, use, or possess any real or personal property in Tennessee; have a bank account in Tennessee; or lease or maintain any office, residence, or place of business in Tennessee.  *Id.*, ¶¶ 8-10.  Defendant Jacobs is not licensed to practice law in Tennessee, does not advertise or solicit clients in Tennessee, and has no employees who solicit business or reside in Tennessee.  *Id.*, ¶¶ 11-12.

Defendant Jacobs does not hold himself out as doing business in Tennessee through advertisements, listings, or any other manner, and has never supplied or contracted to supply goods, materials, or services that could be used, consumed, or rendered in Tennessee.  *Id.*, ¶¶ 13,

17.

He has not appeared on a *pro hac vice* basis in any state case in Tennessee, and prior to being named as a Defendant in this action, he had never been a plaintiff or defendant in any lawsuit in Tennessee. *Id.*, ¶¶ 14-15.

Defendant Jacobs was involved in Plaintiffs' personal injury lawsuit as an attorney for Plaintiffs. *Id.*, ¶ 16. That lawsuit arose from events that occurred in the State of Indiana, and the lawsuit was filed and concluded in the courts of Marion County, Indiana. *Id.* No aspect of that lawsuit involved individuals, businesses, or real or personal property located in Tennessee. *Id.*

If required to defend himself in Tennessee, Defendant Jacobs will have to travel to Tennessee and will incur substantial cost and inconvenience in doing so. *Id.*, ¶ 18. Traveling to Tennessee would also disrupt his work as an attorney in Indiana. *Id.*

### 6. William Hurst

Defendant Hurst is a resident and citizen of Indiana. Docket No. 91-2, Declaration of William Hurst ("Hurst Dec."), ¶ 4. He is an attorney in good standing and licensed to practice by the Indiana Supreme Court, and his principal place of business is located at 152 East Washington Street, Indianapolis, Indiana, 46204. *Id.*, ¶¶ 5-6. Defendant Hurst has never resided in, or been a citizen of, Tennessee. *Id.*, ¶ 7. He does not own, use, or possess any real or personal property in Tennessee; have a bank account in Tennessee; or lease or maintain any office, residence, or place of business in Tennessee. *Id.*, ¶¶ 8-10. Defendant Hurst is not licensed to practice law in Tennessee, does not advertise or solicit clients in Tennessee, and has no employees who solicit business or reside in Tennessee. *Id.*, ¶¶ 11-12.

Defendant Hurst does not hold himself out as doing business in Tennessee through

advertisements, listings, or any other manner. *Id.*, ¶ 13.

Defendant Hurst has appeared on a *pro hac vice* basis in only one case in Tennessee: *Estate of Michael Bryan Jones, by Doreen Oliphant, Executor v. Jerry Posey, Roddy Coca-Cola Bottling Company, Inc., and Coca-Cola Enterprises, Inc.,* Case No. CC14132, in the Circuit Court for Campbell County, Tennessee. *Id.*, ¶ 14. While he does not recall the details of the case, Defendant Hurst believes the case was filed and concluded in 2002. *Id.* He took a deposition and attended a mediation in Knoxville, but otherwise the case did not require him to be physically present in Tennessee. *Id.* That case in no way involved any party or issue in the case at bar. *Id.*

Prior to being named as a Defendant in this action, Defendant Hurst had never been a plaintiff or defendant in any lawsuit in Tennessee. *Id.*, ¶ 15.

Defendant Jacobs was involved in Plaintiffs' personal injury lawsuit as an attorney for Plaintiffs. *Id.*, ¶ 16. That lawsuit arose from events that occurred in the State of Indiana, and the lawsuit was filed and concluded in the courts of Marion County, Indiana. *Id.* No aspect of that lawsuit involved individuals, businesses, or real or personal property located in Tennessee. *Id.*

Other than his *pro hac vice* appearance in the matter discussed above, Defendant Jacobs has never supplied or contracted to supply goods, materials, or services that could be used, consumed, or rendered in Tennessee. *Id.*, ¶ 17.

If required to defend himself in Tennessee, Defendant Hurst will have to travel to Tennessee and will incur substantial cost and inconvenience in doing so. *Id.*, ¶ 18. Traveling to Tennessee would also disrupt his work as an attorney in Indiana. *Id.*

### 7. Curtis Farran

Defendant Farran is a resident and citizen of Indiana. Docket No. 96-1, Declaration of Curtis Farran ("Farran Dec."), ¶ 2. At the time of the filing of his Declaration, Defendant Farran was employed by PNC Wealth Management as the Vice President & Senior Trust Advisor. *Id.*, ¶ 3. His principal place of business is in Carmel, Indiana. *Id.*, ¶ 4.

Defendant Farran has never resided in, or been a citizen of, Tennessee. *Id.*, ¶ 5. He does not own, use, or possess any real or personal property in Tennessee; does not lease or maintain any office, residence, or place of business in Tennessee; has not appointed a registered agent in Tennessee; does not own or operate any business in Tennessee; does not have a bank account in Tennessee; does not solicit business in Tennessee; has never solicited business in Tennessee; and does not conduct any business whatsoever in Tennessee. *Id.*, ¶¶ 6-11, 14-15.

He does not hold himself out as doing business in Tennessee through advertisements, listings, or bank accounts, and has never specifically targeted Tennessee with an advertising campaign. *Id.*, ¶¶ 12-13.

Prior to the instant action, Defendant Farran had never been a plaintiff or defendant in any lawsuit venued in Tennessee. *Id.*, ¶ 16.

In 2002, after Plaintiffs' settlement had been reached, during the time that Defendant Farran worked in the trust department of National City Bank in Indiana, he met with Plaintiffs, their counsel, and others, to discuss whether the portion of the settlement funds for Jazzlyn Taylor should be placed in a special needs trust or whether a guardianship for Jazzlyn should be established. *Id.*, ¶¶ 17, 18. Plaintiffs decided that they wanted a guardianship. *Id.*, ¶ 17. They instructed that such should be set up with National City Bank to hold the funds and to be co-

guardian of the account with them. *Id.* That meeting was followed soon thereafter by another meeting, when Defendant Farran was present, and when the account was opened. *Id.* This was Defendant Farran's only involvement with Plaintiffs. *Id.* None of Defendant Farran's involvement with Plaintiffs took place in Tennessee or with individuals or businesses located in Tennessee. *Id.*, ¶ 19.

If required to defend himself in Tennessee, Defendant Farran will have to travel to Tennessee at significant cost and inconvenience. *Id.*, ¶ 20.

### 8. Charles Harlan

Defendant Harlan lives and works in Maryland. Docket No. 124-1, Affidavit of Charles Harlan ("Harlan Aff."), ¶ 2. From 1987 until 2002, he was employed by Structured Financial Associates ("SFA"). *Id.*, ¶ 3. Defendant Harlan was an SFA founder, and served as Chief Operating Officer, President, and Vice President during his time with the company. *Id.* From August 2002 until April 2004, Defendant Harlan was employed by Continental Assurance Company ("CNA") as an Assistant Vice President. *Id.*, ¶ 4.

Defendant Harlan does not own, use, or possess any real or personal property in Tennessee; does not lease or maintain any office, residence, or place of business in Tennessee; has not appointed a registered agent in Tennessee; does not own or operate any business in Tennessee; does not have a bank account in Tennessee; does not solicit business or reside in Tennessee; and has no employees who solicit business or reside in Tennessee. *Id.*, ¶¶ 5-10, 13.

Defendant Harlan does not hold himself out as doing business in Tennessee through advertisements, listings, or bank accounts; does not advertise in Tennessee; does not supply or contract to supply goods, materials, or services that could be used, consumed, or rendered in

Tennessee; and does not conduct any business whatsoever in Tennessee. *Id.*, ¶¶ 11-12, 14-15.

Prior to the instant action, Defendant Harlan had never been a plaintiff or defendant in any lawsuit venued in Tennessee. *Id.*, ¶ 16.

Beginning in or about January 2003 until April 2004, Defendant Harlan worked part of his time for CNA in Tennessee, but he continued to reside in Maryland. *Id.*, ¶ 17. He has not conducted business in Tennessee since 2004. *Id.*

Defendant Harlan was President of SFA in 2002, when Plaintiffs' case was settled. *Id.*, ¶ 18. Defendant Harlan does not recall Plaintiffs' case, but as President, he would not have had any personal involvement with the file. *Id.*

None of Defendant Harlan's work for SFA and/or CNA, on behalf of Plaintiffs or anyone else, took place in Tennessee. *Id.*, ¶ 19.

If required to defend himself in Tennessee, Defendant Harlan would have to travel to Tennessee at significant cost. *Id.*, ¶ 20.

### 9. Gina Noble

Defendant Noble lives and works in Maryland. Docket No. 124-2, Affidavit of Gina Noble ("Noble Aff."), ¶ 2. From 1989 until 2005, she was an employee of Structured Financial Associates ("SFA"). *Id.*, ¶ 3. Defendant Noble began as a clerk and ultimately rose to the level of the Office Manager. *Id.*

Defendant Noble has never been to Tennessee. *Id.*, ¶ 4. She does not own, use, or possess any real or personal property in Tennessee; does not lease or maintain any office, residence, or place of business in Tennessee; has not appointed a registered agent in Tennessee; does not own or operate any business in Tennessee; does not have a bank account in Tennessee;

does not solicit business or reside in Tennessee; has never solicited business in Tennessee; and has no employees who solicit business or reside in Tennessee. *Id.*, ¶¶ 5-11, 14.

Defendant Noble does not hold herself out as doing business in Tennessee through advertisements, listings, or bank accounts; has never specifically targeted Tennessee with an advertising campaign; has never supplied or contracted to supply goods, materials, or services that could be used, consumed, or rendered in Tennessee; and does not conduct any business whatsoever in Tennessee. *Id.*, ¶¶ 12-13, 15-16.

Prior to the instant action, Defendant Noble had never been a plaintiff or defendant in any lawsuit venued in Tennessee. *Id.*, ¶ 17.

Defendant Noble was employed by SFA during the time of Plaintiffs' personal injury lawsuit, but she has no memory of Plaintiffs or their case. *Id.*, ¶ 18. Her only responsibility at that time would have been providing the documents to the life insurance company. *Id.* Accordingly, if she interacted with the case at all, her interaction would have been purely clerical (i.e. submitting and filing documents), and she would not have interacted with Plaintiffs in any way. *Id.*

None of Defendant Noble's work for SFA, on behalf of Plaintiffs or anyone else, took place in Tennessee. *Id.*, ¶ 19.

If required to defend herself in Tennessee, Defendant Noble would have to travel to Tennessee at significant cost. *Id.*, ¶ 20.

**10. General Jurisdiction**

As discussed above, general jurisdiction arises when a defendant maintains contacts with the forum state that are sufficiently continuous and systematic, even when the cause of action has

no relation to those contacts. *Harris,* 281 Fed. Appx. at 492. When determining whether a defendant has "continuous and systematic" contacts, courts within the Sixth Circuit consider several factors, including: (1) whether the defendant has a physical presence in the forum state; (2) whether the defendant solicits business in the forum state; (3) the extent to which the defendant holds itself out as doing business in the forum state through advertisements, listings, or bank accounts; and (4) the volume of business conducted in the forum state. *See, e.g., Beightler v. Produkte Fur Die Medizin AG*, 610 F. Supp. 2d 847, 850-51 (N.D. Ohio 2009).

As has been demonstrated via the Affidavits and Declarations set forth above, none of the Defendants in this action: (1) has a physical presence in Tennessee; (2) solicits business in Tennessee; (3) holds him/her/itself out as doing business in Tennessee through advertisements, listings, or bank accounts; or (4) conducts any volume of business in Tennessee. Accordingly, Plaintiffs cannot establish that Defendants have the requisite continuous and systematic contacts with Tennessee so as to confer general jurisdiction over them upon this Court.

**11. Specific Jurisdiction:**

As discussed above, specific personal jurisdiction arises when: (1) Defendants have purposefully availed themselves of the privilege of acting or causing a consequence in Tennessee; (2) the cause of action has arisen from Defendants' activities in Tennessee; and (3) Defendants' acts or the consequences of their acts had a substantial enough connection with Tennessee to make the exercise of personal jurisdiction reasonable. *Id.*

**a. Purposeful Availment**

As noted, purposeful availment occurs when a defendant makes a deliberate effort to direct its activities toward, and make contact with, the forum state. *Bridgeport Music, Inc.,* 327

F.3d at 478.  As established in the Affidavits and Declarations set forth above, none of the Defendants in this action made any "deliberate effort to direct [his/her/its] activities toward, and make contact with," Tennessee.

### b.  **"Arising From"**

As also noted, a cause of action "arises from" a defendant's contacts with the forum state when the cause of action has a "substantial connection" to the defendant's forum state activities. *Tharo Systems, Inc.*, 196 Fed. App'x. At 371.  As established, all events related to the incident giving rise to this cause of action occurred in Indiana, none of the Defendants engaged in sufficient Tennessee activities, and none of the Defendants has a substantial connection to Tennessee.

### c.  **Reasonableness**

As noted, when the first two prongs have been satisfied, the inquiry turns to whether "the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable."  *Youn*, 324 F.3d at 419.  Because the undersigned has determined that the first two prongs have not been satisfied, reasonableness is not an issue before the undersigned.

### III.  Conclusion

For the foregoing reasons, the undersigned concludes that this Court lacks personal jurisdiction over Defendants.  Accordingly, the undersigned recommends that the instant Motions to Dismiss (Docket Nos. 83, 85, 91, 96, and 123) be GRANTED, and that this action be DISMISSED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen days

after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court.  Any party opposing said objections shall have fourteen days after service of any objections filed to this Report in which to file any response to said objections.  Failure to file specific objections within fourteen days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation.  *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

E. CLIFTON KNOWLES
United States Magistrate Judge